UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ADRIAN DONTRELL YOUNG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | ) No. 19-2393-JDT-cgc |
| | ) |
| CEDRIC SCOTT, ET AL., | ) |
| | ) |
| Defendants. | ) |

ORDER TO MODIFY THE DOCKET;
GRANTING PLAINTIFF'S MOTION TO AMEND (ECF Nos. 13 & 23);
PARTIALLY DISMISSING AMENDED COMPLAINT WITH PREJUDICE;
DENYING MOTION FOR DISCOVERY (ECF No. 20),
DENYING MOTIONS FOR APPOINTMENT OF COUNSEL (ECF Nos. 22 & 26),
AND GRANTING MOTION TO VIEW CAMERA FOOTAGE (ECF No. 32)

Plaintiff Adrian Dontrell Young, a pretrial detainee at the Shelby County Criminal Justice Center (Jail) in Memphis, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Subsequently, the Court partially dismissed the complaint and allowed Plaintiff's Fourteenth Amendment excessive force claims to proceed against five Defendants: Sergeant Carlus Cleaves and Officers Cedric Scott, Lareko Elliott, Dedric Rogers, and Demario Pree.[1] (ECF No. 8.) Defendants filed an answer (ECF No. 19), and a scheduling order was entered (ECF No. 21). Before the Court for consideration are four

---

[1] The Clerk shall MODIFY the docket to include these Defendants' first names and to correct the spelling of Defendant Rogers's last name, as provided in the answer. (ECF No. 19.)

motions filed by Plaintiff: a motion to amend filed on February 5, 2020 (ECF No. 13),[2] a motion for discovery (ECF No. 20), and two motions for appointment of counsel. (ECF Nos. 22 & 26.)

I. MOTION TO AMEND

In Plaintiff's proposed amended complaint, he realleges all of his previous claims, including the claims against the dismissed Defendant, Off. Halliburton, and also adds new claims and the following new Defendants[3]: Officer (Off.) First Name Unknown (FNU) Youngblood; Sergeant (Sgt.) A. Buford; Sgt. FNU Evers II; Sgt. A. Reed; Sgt. FNU Bunting; Sgt. FNU Williams; Lieutenant (Lt.) FNU Vagener; Lt. FNU Hampiton; Lt. FNU Hollierman; Lt. FNU Anderson; Off. B. Jones; Off. FNU Brown Taylor; Off. FNU Clements; Off. FNU Walker; J. Wilhit; FNU Dance; FNU Washington; Chief of Security Kirk Fields; Internal Affairs (IA) Off. FNU Katron; Shelby County Sheriff Floyd Bonner; Shelby County;[4] Dr. FNU Web; and Wellpath, Inc. (Wellpath) (ECF No. 13 at PageID 82-83; ECF No. 13-1 at PageID 84-85; ECF No. 13-2 at PageID 87-89.) Because leave to

---

[2] On August 25, 2020, Young submitted duplicate copies of both his proposed amendment and the declaration in support of the motion to amend, albeit with a different cover letter. (ECF No. 23.) When referring to the amendment, the Court will cite only to Document No. 13.

[3] Young's spelling of some of the new Defendants' names is not consistent throughout his documents, and his handwriting is not always clear. The lists of Defendants also are not identical. (*See* ECF Nos. 13 at PageID 82-83; ECF No. 13-1 at PageID 84-85; ECF No. 13-2 at PageID 87-89.) Given those difficulties, the Court has deciphered the intended Defendants and their correct names as best it can.

[4] Young names both the Shelby County Sheriff's Office (SCSO) and the Jail as separate Defendants, but any claims against the SCSO and/or the Jail as an entity must be treated as claims against Shelby County itself.

amend should be freely given "when justice so requires," *see* Federal Rule of Civil Procedure 15(a)(2), the motion to amend is GRANTED. The Clerk shall MODIFY the docket to add the twenty-three new Defendants.

In the amended complaint, Plaintiff alleges he had an "altercation" with Off. Youngblood on January 3, 2019. Sgt. Buford allegedly "refused to address" the altercation, resulting in Plaintiff filing a grievance against Buford. (ECF No. 13-2 at PageID 89-90.) On February 14, 2019, Youngblood allegedly fabricated a misconduct charge against Plaintiff for exposing himself to her, which he contends was in retaliation for the grievance he filed against Buford. (*Id.*) The next day, February 15, 2019, Youngblood allegedly attempted to provoke Plaintiff into cursing or disrespecting her. (*Id.* at PageID 90.) She then "came with another write up"; Plaintiff attempted to reach Sgt. Evers, the shift supervisor, by yelling out of the sally port, but Evers "did not come" and Youngblood would not call him. (*Id.*) Plaintiff alleges the second write-up also was fabricated. (*Id.*) He filed a grievance against Youngblood and alleges that Off. Jones was the Grievance Coordinator on that grievance and also did "almost all" his disciplinary hearings. (*Id.*) Plaintiff seems to allege that he attempted to explain to Off. Jones that it was improper for her to act in both those roles, but she nevertheless denied his grievance against Youngblood. (*Id.*)

Plaintiff further alleges he spoke with "a D.R.T. Ofc. Davis" about the situation and also filed a grievance with Chief Fields, Sheriff Bonner and Internal Affairs, but nothing was done. (*Id.*) As a result of the disciplinary charges for "obscene action and threating

[sic] staff," Plaintiff was moved to cell 1-D-15 for thirty days,[5] but still no investigation was conducted. (*Id*.) He states he was then "moved to 1-E-11 but reason to be [sic] Plaintiff was housed in a unsanitary cell 1-D-15 next to shower for 30 days after fileing [sic] grievance Plaintiff was moved" to cell 1-E-11. (*Id.*) Plaintiff states he is unaware of who was responsible for moving him to cell 1-E-11. (*Id.*)

On March 28, 2019, after Plaintiff had been in cell 1-E-11 for seven days, Plaintiff's cellmate refused Defendant Pree's directive to wear his orange jumpsuit. (*Id.* at PageID 90-91.) This "upset several officers" (*id*. at PageID 91) and ultimately led to the alleged use of force on Plaintiff. (*Id*.) The amendment describes that use of force in detail. (*Id.* at PageID 91-92.)

Plaintiff alleges he was taken to Regional One Medical Center after the alleged assault where he was told he had a broken arm; however, he contends he was not properly treated at the hospital. (*Id.* at PageID 92.) When he was returned to the Jail, the facility's medical staff also "refuse[d] to let me get the treatment as needed" or to wash off the chemical agent that had been used on him. (*Id.* at PageID 93.) An unknown member of the Jail's medical staff told Plaintiff he "would have to be seen by an outside provider." (*Id.*) Plaintiff further alleges Dr. Web "is responsible for arran[g]ing for inmates who have specialized treatment or physical therapy regimes to be called out of th[ei]r housing units and allowed to complete th[ei]r treatment" but failed to do so with Plaintiff. (*Id.*; *see also*

---

[5] The Court interprets this allegation as indicating Plaintiff was moved to cell 1-D-10 either pending a disciplinary hearing or as punishment after conviction on the disciplinary charges.

*id.* at PageID 94 (Wellpath and Dr. Web failed "to provide follow-up examination and treatment").) Confusingly, Plaintiff then alleges that "his left mid-section only goes to a certain degree and does not properly work" because the Jail did not allow proper treatment. (*Id.* at PageID 93.) He contends this failure to treat his "left mid-section STD [sexually-transmitted disease] and etc." amounted to deliberate indifference. (*Id.* at PageID 97.) He does not explain the circumstances around any lack of treatment for an STD or what it has to do with the injuries he sustained in the alleged assault.

Plaintiff further alleges the SCSO is aware of employees' abusive conduct against inmates but has failed to adequately train, supervise, and discipline staff. (ECF No. 13-2 at PageID 92, 94.) He contends the Jail breached a duty of care under "municipal policy" to protect inmates from assault, abuse, and battery. (*Id.* at PageID 95, 98.)

The Court construes the amended complaint as asserting these claims: (1) excessive force (ECF No. 13-2 at PageID 94-95; (2) assault, battery, and negligence (ECF No. 13-2 at PageID 94-95, 99; (3) failure to protect, train, and supervise (ECF No. 13-2 at PageID 96-97; (4) inadequate medical care (ECF No. 13-2 at PageID 96-97; (5) retaliation (ECF No. 13 at PageID 89-90; and (6) inadequate grievance process (*id.*). The amendment seeks declaratory relief, injunctive relief, and compensatory damages. (ECF No. 13-2 at PageID 99-100.)

The standards for screening Plaintiff's claims under the Prison Litigation Reform Act were set out in the Court's October 19, 2019, order and will not be reiterated here. (*See* ECF No. 8 at PageID 42-43.)

*Claims Against Defendants As To Whom Misconduct Is Not Alleged*:  The amended complaint does not describe any conduct by Defendants Brown Taylor, Bunting, Williams, Reed, Vagener, Hampiton, Hollierman, or Anderson.  (*See* ECF No. 13 at PageID 83; ECF No. 13-1 at PageID 84-85; ECF No. 23 at PageID 134-35.)  When a complaint fails to allege any action by a Defendant, it necessarily fails to "state a claim for relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Moreover, Plaintiff may not sue Defendants Bonner or Fields or any other named Defendant merely because of their supervisory positions at the Jail.  Under § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008).  Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  A supervisory official, who is aware of the unconstitutional conduct of his subordinates but fails to act, generally cannot be held liable in his individual capacity.  *Grinter*, 532 F.3d at 575-76; *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996).

Furthermore, a failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability.  *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation.").  Because Phillips fails to plead that Defendants Bonner, Fields, Brown Taylor, Bunting,

6

Williams, Reed, Vagener, Hampiton, Hollierman, or Anderson took, or failed to take, any action that violated his rights, he does not state a claim against them. These claims are subject to dismissal.

*Claims Against Shelby County*:  Plaintiff alleges the Jail breached a duty of care under "municipal policy" to protect inmates from assault, abuse, and battery. (ECF No. 13-2 at PageID 95, 98.)  He also alleges the Shelby County Sheriff's Office (SCSO) failed to take disciplinary action against the Defendants who assaulted him, failed to intervene to prevent or stop that assault, and failed to adequately train employees on use of chemical agent. (*Id.* at PageID 96-97.)  As noted, *supra* note 3, these claims are treated as claims against Shelby County.

A local government such as a municipality or county "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691 (1978) (emphasis in original); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994).  A municipality may be held responsible for a constitutional deprivation only if there is a direct causal link between a municipal policy or custom and the alleged deprivation. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Co., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993).  To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of

7

the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original)).

In this case, Young's assertions that the Jail and the SCSO failed to protect him and failed to adequately train its employees are only conclusory, unsupported by any actual facts. These allegations are insufficient to state a claim for municipal liability under § 1983 and are subject to dismissal.

*Excessive Force Claims*: The Court has already allowed Plaintiff's Fourteenth Amendment excessive force claims to proceed against Defendants Scott, Elliott, Rogers, Pree, and Cleaves, but the amended complaint adds new details concerning the alleged assault, which the Court will also allow.

With regard to the restated claims against Defendant Halliburton, the amended complaint does not allege he engaged in any misconduct. The original complaint suffered from this same defect. (*See id*. at PageID 46.) Specifically, the amended complaint particularizes the use of force (ECF No. 13-2 at PageID 91-92), but only states in conclusory fashion that Halliburton "knew and disregarded an excessive risk to inmates' health and safety under the Fourteenth Amendment." (ECF No. 13-2 at PageID 94.) The amendment's vague statement that "Cleaves, Pree, Elliott, Rogers *and etc.…*" were involved in the Incident (ECF No. 13-2 at PageID 91 (emphasis added)) does not meet the

pleading requirements of either Federal Rule of Civil Procedure 8(a)[6] or § 1983.[7]  Young may not make vague claims against a universe of unspecified "etc." parties who have no notice of claims against them.  *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 596-97 (6th Cir. 2012).

The amended excessive force claims against Defendants Scott, Elliott, Rogers, Pree, and Cleaves may go forward, but the excessive force claims against Defendant Halliburton are again subject to dismissal for failure to state a claim on which relief may be granted.

*Inadequate Medical Care Claim*:  Plaintiff alleges Wellpath has a policy of "restricting if not outright denying follow-up care" to inmates "when such care is expensive."  (ECF No. 13-2 at PageID 97-99.)  He contends Dr. Web and Wellpath followed that policy when they refused "to provide follow-up examination and treatment of his left mid-section [STD] and etc."  (*Id*.)  As stated, there are no factual allegations in the amended complaint suggesting that Plaintiff's STD was related in any way to injuries he sustained in the March 28, 2019, assault.  Indeed, except for the conclusory allegation that his broken arm was not properly treated by an unnamed medical provider at the Jail, the amended complaint does not further refer to those injuries.

---

[6] *See Twombly*, 550 U.S. at 555 n.3 (although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief").

[7] *See Iqbal*, 556 U.S. at 676 (a § 1983 plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) (personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983 because "each defendant's liability must be assessed individually based on his own actions").

The Court reviews claims regarding the denial of medical care under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Under *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. To state a cognizable claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Eighth Amendment claims consist of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298.

The objective component of a medical care claim requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" *Blackmore*, 390 F.3d at 897; *see also Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). The subjective component requires that jail officials acted with the requisite intent—i.e.—had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 302-03 (plaintiffs must show officials' "deliberate indifference" to a substantial risk of serious harm); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009). "[D]eliberate indifference describes a state of mind more

10

blameworthy than negligence." *Farmer*, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an inmate's health or safety and disregards that risk. *Id.* at 837. "Not 'every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim.'" *Sarah v. Thompson*, 109 F. App'x 770, 771 (6th Cir. 2004) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997)).

With regard to any claim regarding the alleged failure to treat his broken arm, Plaintiff does not allege Dr. Web ever examined him or even knew about the injury. He alleges only that Web is generally responsible for ensuring inmates receive necessary follow-up treatment. Thus, Plaintiff has failed to allege the subjective component of an Eighth Amendment violation.

Young's vague references to his "left mid-section STD and etc." do not demonstrate that he suffered from a serious medical need for purposes of Eighth Amendment analysis. For example, he does not describe his diagnosis date, his symptoms, their severity, or the condition's duration. Thus, he fails to allege the objective component of a claim of inadequate medical care. His STD-related claim, at most, may amount to a disagreement with his course of treatment or a claim of medical malpractice, neither of which rises to the level of an Eighth Amendment claim. *See Estelle*, 429 U.S. at 106. In addition, even if his condition amounted to a serious medical need, Plaintiff does not allege that any named Defendant knew of and disregarded that need. Thus, Young again does not demonstrate that any Defendant had a "sufficiently culpable state of mind" for purposes of the Eighth Amendment's subjective factor.

11

For all of these reasons, Plaintiff's allegations of inadequate medical care fail to state a claim on which relief may be granted.

*Retaliation Claim*:  Plaintiff alleges that on February 14, 2019, Youngblood submitted a false disciplinary report against him for exposing himself, which he contends was in retaliation for the grievance he had filed against Buford. (ECF No. 13-2 at PageID 89-90.)  The next day, February 15, 2019, Youngblood taunted Plaintiff so as to provoke him into "disrespect[ing] her." (*Id*. at PageID 90.)  This too resulted in a disciplinary report against Plaintiff. (*Id*.)  Young also filed grievances about these incidents with Youngblood.  Afterwards, he "was housed in a[n] unsanitary cell next to shower for 30 days." (*Id*.)

The Court reviews Plaintiff's retaliation claim under the First Amendment. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) ("Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution.").  A claim of retaliation has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  "Protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in . . . civil rights claims." *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *see Thaddeus-X*, 175 F.3d at 391.  Filing a prison grievance also is protected conduct. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010).  "[T]he plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the

12

defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). "Temporal proximity can provide circumstantial evidence of retaliatory motive." *Walton v. Gray*, 695 F. App'x 144, 146 (6th Cir. 2017) (citing *Hill*, 630 F.3d at 475-76); *see King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) (noting that "temporal proximity between protected conduct and retaliatory acts" when close enough may "creat[e] an inference of retaliatory motive"); *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (same).

Plaintiff's allegation that Youngblood fabricated disciplinary charges against him for filing a grievance against Buford does not allege a causal connection that is sufficient to support a claim of retaliation. Plaintiff does not allege that Youngblood said anything to him about the earlier grievance, that she threatened to retaliate, or that she even knew he had filed a grievance against Buford.[8] Moreover, the allegedly fabricated disciplinary write-ups occurred in mid-February, more than a month after the January 3rd "altercation," so there is no close temporal proximity from which to infer a retaliatory motive.

To the extent Plaintiff contends either of the changes to his housing assignment was done in retaliation for filing a grievance against Youngblood, he again does not identify any direct causal connection between his grievance and those cell reassignments. As stated, *supra* pages 3-4 and note 4, the moves appear to have been connected to Plaintiff's

---

[8] The fact that Plaintiff's grievance against Buford was based on Buford's failure to respond to Plaintiff's January 3, 2019, "altercation" with Youngblood does not necessarily mean Youngblood actually knew Plaintiff had filed a grievance against Buford.

13

disciplinary charges. He does not allege Youngblood had anything to do with the reassignments and explicitly states he "is not aware of who made [the cell change] movement" to cell 1-E-11. (ECF No. 13-2 at PageID 90.)

Plaintiff's claims of retaliation are also subject to dismissal for failure to state a claim on which relief may be granted.

*Claims Of Inadequate Prison Grievance Procedure*: Grievance Coordinator Jones conducted the hearings on Plaintiff's grievances against Youngblood. (ECF No. 13-2 at PageID 90.) Youngblood denied all allegations during the hearings and the grievance was denied. (*Id.*) Plaintiff notified Davis, Field, Bonner, and Katron of his grievances, but "nothing was did said etc. [sic]." (*Id.*) He also alleges that some unidentified "captains" who responded to his grievances fabricated evidence so the grievances would be denied. (*Id.* at PageID 98.) The Court construes these allegations as a claim that the Jail's prison grievance process is inadequate.

"[T]here is no constitutionally protected due process right to unfettered access to prison grievance procedures." *Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005). Thus, prisoners do not possess a constitutional right to a prison grievance procedure. *See Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002); *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (holding that plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim "because there is no inherent constitutional right to an effective prison grievance procedure"). Thus, Young's allegations about the Jail's grievance process do not offer him a basis to relief and fail to state a claim.

*Claims Of Assault, Battery, & Negligence*: Young argues that "[t]he actions of [Defendants Scott, Cleaves, Elliot, Pree, Rogers and Halliburton] in using physical force against the Plaintiff without need [or] provocation, or in failing to intervene to prevent the misuse of force, constitutes the tort[s] of ass[a]ult, battery, and negligence under the law of the State of Tennessee [and] negligent failure to protect." (ECF No. 13-2 at PageID 94-95.)  The Court has supplemental jurisdiction over these state-law claims under 28 U.S.C. § 1367(a).

As to Defendant Halliburton, the Court has determined the complaint contains no factual allegations of wrongdoing against him.  Therefore, any causes of action against Halliburton under state law also fail to state a claim.  However, with regard to Defendants Scott, Cleaves, Elliot, Pree, and Rogers, the claims are based on the same facts as his § 1983 excessive force claims.  The Court will therefore allow the state-law claims against these Defendants to go forward.

In conclusion, the amended complaint (ECF No. 13-2) is now the operative pleading in this case.  However, for the foregoing reasons, all claims in the amended complaint are DISMISSED WITH PREJUDICE for failure to state a claim on which relief may be granted *except* the claims against Defendants Scott, Cleaves, Elliot, Pree, and Rogers for excessive force under § 1983 and for assault, battery, negligence, and negligent failure to protect under Tennessee law.

II.  MOTION FOR DISCOVERY

On May 7, 2020, Plaintiff filed a motion for discovery.  (ECF No. 20.)  He states "it is difficult to process a[n] investigation with no discovery.  I need video footage, medical

15

records, pictures from D.R.T. of the facility of SCCJC, and everything else to help out on case." (*Id*. at PageID 127.)

Plaintiff should have pursued his discovery requests from Defendants themselves rather than via a Court order. *See*, *e.g.*, Fed. R. Civ. P. 34 ("A party may serve on any other party a request . . . , to produce . . . any designated documents or electronically stored information . . . ."). However, there is nothing in the record suggesting that Plaintiff ever served specific discovery requests upon any Defendant. There is, therefore, no discovery response that can be compelled from Defendants at this time. The motion for discovery is therefore DENIED.

III. MOTIONS FOR APPOINTMENT OF COUNSEL

On July 7, 2020 (ECF No. 22) and November 13, 2020 (ECF No. 26), Plaintiff filed motions seeking appointment of counsel. He states that he "need[s] representation of a lawyer for legal advice." (ECF No. 22 at PageID 131.) He seeks counsel because he "is indigent." (ECF No. 26 at PageID 156.) He offers no other bases for these motions.

Pursuant to 28 U.S.C. § 1915(e)(1), the "court may request an attorney to represent any person unable to afford counsel." However, "[t]he appointment of counsel in a civil proceeding is not a constitutional right." *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); *see also Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) ("[T]he plaintiffs were not entitled to have counsel appointed because this is a civil lawsuit."); *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993) (no constitutional right to counsel in a civil case); *Farmer v. Haas*, 990 F.2d 319, 323 (7th Cir. 1993) ("There is no constitutional or . . . statutory right to counsel in federal civil cases . . . ."). Appointment of counsel is "a

16

privilege that is justified only by exceptional circumstances." *Lavado*, 992 F.2d at 606 (internal quotation marks and citation omitted).

"In determining whether 'exceptional circumstances' exist, courts have examined the type of case and the abilities of the plaintiff to represent himself. This generally involves a determination of the complexity of the factual and legal issues involved." *Id.* at 606 (internal quotation marks and citations omitted). Appointment of counsel is not appropriate when a *pro se* litigant's claims are frivolous or when his chances of success are extremely slim. *Id.* (citing *Mars v. Hanberry*, 752 F.2d 254, 256 (6th Cir. 1985)); *see also Cleary v. Mukasey*, 307 F. App'x 963, 965 (6th Cir. 2009) (same).

Plaintiff does not identify any "exceptional circumstances" that warrant appointing counsel at this time. The motions for appointment of counsel are DENIED.

## IV. MOTION TO VIEW CAMERA FOOTAGE

On February 25, 2021, Plaintiff filed a motion again asking to view the camera footage from the Jail. (ECF No. 32.) He supplemented this motion on April 12, 2021, with a document (ECF No. 33) in which he states, notwithstanding the certificate of service provided by Defendants' counsel, that he did not receive a copy of the video evidence Defendants filed with the Court on December 9, 2020. He has, therefore, not been able to view the video.

Plaintiff's motion to view the video footage was not mailed until February 24, 2021 (ECF No. 32-1 at PageID 204), more than sixty days after the filing of Defendants' motion for summary judgment on December 9, 2020 (ECF No. 29). The document that explicitly states he did not receive the video was not mailed until almost six weeks later. Under Local

17

Rule 56.1(b) and Federal Rules of Civil Procedure 6(a) and (d), Plaintiff's response to the summary judgment was due on or before January 11, 2021.  Thus, he has not been diligent in notifying the Defendants and the Court that he did not receive the video.

The Court would be justified in denying Plaintiff's motion.  However, by separate order entered this date, the Defendants' motion for summary judgment is being denied without prejudice to re-filing.  Thus there will be sufficient time to ensure Plaintiff is given the opportunity to view the video footage.  The motion is therefore GRANTED.  Defendants are ORDERED to ensure that Plaintiff actually receives and is given a chance to view any and all video footage relied upon in support of a renewed motion for summary judgment.  Because it may be against the Jail's security regulations for Plaintiff to have a CD in his possession, Defendants' counsel is directed to assist him in making adequate arrangements with Jail officials to view the footage.  The Court acknowledges that those arrangements may take some time; therefore, Plaintiff is hereby allowed sixty days to respond to any renewed motion for summary judgment.

IT IS SO ORDERED.

                                                 s/ **James D. Todd**
                                                 JAMES D. TODD
                                                 UNITED STATES DISTRICT JUDGE